ORIGINAL

AO 91 (Rev. 11/82)                    **CRIMINAL COMPLAINT**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>MALISHA BROOKS<br>aka KATHRYN | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>18 MJ00901 |

18 MJ00901

APR 15 2018
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Complaint for violation of Title 18, United States Code, Section 875(d) (Extortion in Interstate Communications)

| NAME OF MAGISTRATE JUDGE<br><br>**HONORABLE JACQUELINE CHOOLJIAN** | UNITED STATES<br>MAGISTRATE<br>JUDGE | LOCATION<br><br>Los Angeles, California |
|---|---|---|
| DATE OF OFFENSE<br><br>February 2018 through<br>April 14, 2018 | PLACE OF OFFENSE<br><br>Los Angeles County<br>and elsewhere | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 875(d)]

Beginning in or about February 2018, and continuing through on or about April 14, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant MALISHA BROOKS, also known as ("aka") "Kathryn," with the intent to extort money and things of value from the Victim, knowingly transmitted in interstate or foreign commerce telephone communications, electronic text communications, and social media messaging communications that contained a true threat to injure the property and reputation of that Victim, that is, defendant BROOKS threatened to publicly release a video of the Victim that would embarrass and harm the Victim's reputation if the Victim refused to pay defendant BROOKS money.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:  (See attached affidavit, which is incorporated as part of this Complaint).

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:  N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**Richard Alexander:** |
|---|---|
| | OFFICIAL TITLE<br>Special Agent, Federal Bureau of Investigation |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) | DATE<br>April 15, 2018 |
|---|---|

(1) See Federal Rules of Criminal Procedure 3 and 54

AUSA: Adam P. Schleifer 213-894-2686          REC: DETENTION

## **AFFIDAVIT**

I, Richard Alexander, being duly sworn, declare and state as follows:

### I. **PURPOSE OF AFFIDAVIT**

1.     This affidavit is made in support of a criminal complaint against MALISHA BROOKS ("BROOKS") for violations of Title 18, United States Code, Section 875(d) (Extortion in Interstate Communications).

2.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related only in substance and in part.

### II. **BACKGROUND FOR FBI SPECIAL AGENT RICHARD ALEXANDER**

3.     I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI").  I have been a SA with the FBI for over twenty-one years.  I am currently assigned to a Violent Crime Major Offender squad of the FBI's Los Angeles Field Office that investigates extortions and aggravated threats which often involve the use of computers and electronic/digital communications to transmit the threats or commit acts in furtherance of the extortions and threats.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

4.   On or about March 26, 2018, an attorney representing a well-known celebrity (the "Victim") notified the FBI that on or about February 25, 2018, the Victim had received text messages warning that the Victim had been recorded in a sexually-explicit video with two women (the "Video"), and that a representative of those women who identified herself as "ASHLEY" wanted $2 million in order to make the Video "go away."  In early April, while in the presence of FBI SAs, the Victim spoke by telephone with a woman identifying herself as "KATHRYN" (believed to be BROOKS, as described below) who said, among other things, that she was a "mediator" on behalf of the women in the Video and that she expected those women would release the Video if they were not compensated by the Victim.  The FBI determined that KATHRYN was calling from 647-688-2826 (the "Subject Telephone").

5.   From April 10, 2018 through April 14, 2018, an FBI Undercover Employee ("UCE") purporting to be an advisor to the Victim, engaged in additional telephone calls and text message communications with KATHRYN, in which KATHRYN continued to state the Video would be released if the Victim refused to pay in excess of $300,000.  KATHRYN initially agreed to meet the UCE in Los Angeles to receive the extortionate payment.  The FBI determined that KATHRYN was also using the Subject Telephone in her calls with the UCE.

6.   United States Customs and Border Protection ("CBP") agents reported that the Subject Telephone has been used in connection with MALISHA BROOKS's international travel

reservations, and that BROOKS's most recent international travel was an Air Canada Flight from Toronto, Ontario, Canada, to Los Angeles International Airport on April 7, 2018.

7.    Pursuant to a federal warrant, the FBI received cell-site information on April 14, 2018, placing the Subject Telephone in the vicinity of the Fairfield Inn near the Fort Lauderdale-Hollywood International Airport ("FLL").  Fairfield Inn employees told the FBI that BROOKS was registered as a guest of Room 323.  On the same day, KATHRYN asked the UCE to meet in Miami, explaining that she was near FLL and that she would be returning to Canada shortly.

8.    FBI SAs arrested BROOKS at the Fairfield Inn, and seized a phone that had been in BROOKS's back left pocket incident to that arrest.  An FBI SA then called the Subject Telephone, and the phone that had been in BROOKS's pocket began to ring.

9.    After being advised of her Miranda rights, BROOKS admitted that she had called the UCE from the Subject Telephone, had identified herself on those calls as "Kat," and that she had been negotiating payment for a video of the Victim in "weird" and "compromising" positions.  BROOKS said that she did not directly contact Victim or his companion.  BROOKS said that one of the women in the Video had contacted her through a mutual acquaintance and that BROOKS had agreed to participate in this scheme.

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

**A.    The Victim's Initial Contact With FBI and Description of Initial Extortion Circumstances and Communications**

10.    On or about March 26, 2018, an attorney representing the Victim notified the FBI that the Victim began to receive text messages on the Victim's personal phone from a sender purporting to be "ASHLEY" on or about February 25, 2018.

11.    Describing herself as a "concerned friend," "in representation of . . . two ladies" who had appeared, with the Victim, in a sexually-explicit, "2 hour long video [sic]," "ASHLEY" stated that (s)he "want[ed] both ladies taken care each [sic] with a million each."

12.    In the same text messaging chain, "ASHLEY" emphasized, "I know how damaging this is for you and i'd suggest you take things a bit more serious [sic]." The Victim asked, "[w]hat you're offering is if I pay, you'll make the video go away?" "ASHLEY" responded, "[y]es."

13.    In subsequent meetings with the FBI, the Victim described an encounter on or about February 9, 2018, in which the Victim met with an unknown female at the Victim's apartment, after arranging a date through the online dating website, SeekingArrangement.com. The Victim agreed to pay the unknown female ("UF1") 800 dollars for her time. After approximately one hour, a second unknown female ("UF2") came to Victim's apartment. According to the Victim, the Victim consumed alcohol and cocaine, disrobed, and requested that both UF1 and UF2

4

perform various intimate acts upon him.  The Victim recalled
that UF1 and/or UF2 filmed portions of the encounter.

14.   The Victim stated that the Victim paid each woman
approximately $2,000 that evening, February 9, 2018, but that
UF1 and/or UF2 expressed that this was insufficient; one or both
UF1 and/or UF2 then took an expensive leather bag as
"collateral" against additional payment before leaving the
Victim's home.

**B.    Suspects' Reinitiation of Contact with VICTIM and Family**

15.   Subsequent to receiving the above-referenced
communications, the Victim changed his or her phone number.

16.   On or about March 22, 2018, the Victim's wife, former
companion, and daughter all received private messages on
Instagram, a social media service, from two Instagram accounts:
"@Kathrynp__" and "@boxingisthewgreatestgame."  These private
messages, which were similar in substance, advised the three
women that they needed to reach the Victim, because the Victim
had been filmed while intoxicated and while "watching weird
stuff."

17.   On or about March 25, 2018, the Victim's former
companion continued the messaging conversation initiated by
"@Kathrynp__," and then spoke by telephone with a person
purporting to use that Instagram account, who identified herself
as KATHRYN.  KATHRYN then sent the Victim's former companion
seven images depicting the Victim while the Victim was nude and
engaging in sexual acts with various foreign objects.  KATHRYN
advised that while she "may not be able to help anymore with the

video being released, at the very least you and his family have been made aware of this before the video is exposed."

**C.     Recorded Calls and Communications with and by FBI**

18.   While in the presence of FBI SAs, who monitored and recorded the Victim's telephone calls, the Victim spoke by telephone with a woman purporting to be KATHRYN on or about April 6 and April 9, 2018.  In these recorded calls, KATHRYN identified herself as a "mediator" on behalf of UF1 and UF2, and emphasized to the Victim that she was in sole possession of video footage depicting the Victim engaged in compromising sexual acts and illegal drug use (referring to the Video), and that UF1 and UF2 believed they had been promised additional payments, and "just want to be compensated."  KATHRYN further noted that UF1 and UF2 had already contacted media outlets regarding the potential distribution of the Video, but that UF1 and UF2 perceived distribution to the media as a "last resort," to be undertaken only if they were not compensated by the Victim.

19.   Beginning on or about April 10, 2018, and continuing through April 13, 2018, the UCE, purporting to be an advisor to the Victim , engaged in at least six additional telephone calls, as well as additional text message communications, with a person purporting to be KATHRYN.  In these calls and text messages, which are, in substance, similar to and consistent with the above-described calls and messages, the KATHRYN stated "yes," she was aware of the harm that release of the footage would have upon the Victim's reputation, and confirmed that, while she was

"just a broker" working on behalf of UF1 and UF2, she was also a professional in that "business," and could confirm that the footage would be released if the Victim refused to come to an agreement regarding additional payments in excess of $300,000.

20.  On these calls, KATHRYN also stated that she was in the Miami, Florida, area, but expected to arrive on Friday evening, April 13, in the Los Angeles area, in order to work at the upcoming Coachella Valley Music and Arts Festival.

**D.   Investigation of KATHRYN's Phone Number Provided Probable Cause to Believe that KATHRYN is MALISHA BROOKS, and that BROOKS Used the Subject Phone**

21.  Although the calls coming from the person purporting to be KATHRYN called the UCE's phone with a "blocked"[1] number, the FBI determined, initially through records received pursuant to a grand jury subpoena, that KATHRYN was calling from telephone number 647-688-2826, the Subject Telephone.

22.  Consistent with this information, on or about 2:30 p.m. on Friday, April 13, 2018, the UCE received an apparently accidental call from the Subject Telephone in which the Subject Telephone's number appeared upon the UCE's phone in unblocked fashion.

23.  A public-source database identified the Subject Telephone as a Toronto, Ontario, Canada, wireless number serviced by TELUS Mobility.

---

[1] I am aware, from my training and experience in crimes involving cellular communications, that callers can select and deselect a number-origin-blocking function on many smartphones, such that calls from the same phone may provide or may not provide the caller's phone number, depending on which setting has been selected.

24.   On April 13, 2018, AT&T Wireless reported to the FBI that the Subject Telephone is roaming on its United States network.

25.   Through additional investigation, including consultation with CBP, I learned that the Subject Telephone was used four times in connection with international travel reservations in 2017.  Those international travel reservation records identify MALISHA BROOKS, born in November 1980, as the passenger associated with that number.  BROOKS's most recent international travel was an Air Canada Flight from Toronto, Ontario, Canada, to Los Angeles International Airport on April 7, 2018.

26.   On the evening of April 13, 2018, this Court granted the government's sealed, ex parte application for a warrant authorizing (1) the disclosure of GPS and Cell-Site Information and (2) the use of a cell-site simulator.

27.   On or about April 14, 2018, the FBI began to receive cell-site information from the Subject Telephone, which information confirmed that the Subject Telephone was within the vicinity of the Fairfield Inn at 2081 Griffin Road, Fort Lauderdale, Florida, a hotel near the Fort Lauderdale-Hollywood International Airport in Fort Lauderdale, Florida ("FLL").

28.   On the same day, the UCE received communications from the Subject Telephone advising that KATHRYN had decided not to travel to Los Angeles, but instead had decided to remain near FLL for one or two days, after which time she would return to Canada.

29.   In those communications, KATHRYN told the UCE that the Victim would have to arrange for $600,000 to be presented to KATHRYN at or near FLL in order to satisfy the demands of UF1 and UF2.

     **E.**    **BROOKS was Arrested at the Fairfield Inn with the Subject Telephone**

30.   At or about 5:37 p.m. Eastern Time on April 14, 2018, Fairfield Inn staff told FBI SAs that that BROOKS was registered as a guest of Room 323 in the Fairfield Inn.

31.   At or about 8:00 p.m. Eastern Time on April 14, 2018, a staff member of the Fairfield Inn informed FBI SAs that the female guest in Room 323 had identified herself to that staff member as BROOKS.

32.   At or about 8:33 p.m. Eastern Time on April 14, 2018, FBI SAs knocked on Room 323 at the Fairfield Inn and asked for BROOKS.  When BROOKS came to the threshold of the door, FBI SAs placed her under arrest, and she simultaneously identified herself to the SAs as BROOKS.

33.   Incident to that arrest, SAs seized an iPhone 6, model number MN122VC/A, serial number FK1V3C8EHFLW, which had been in BROOKS's back left pocket.

34.   When an FBI SA called the Subject Telephone, the above-referenced iPhone began to ring, thereby confirming that BROOKS possessed the Subject Telephone.

     **F.**    <u>**During Mirandized Interview, BROOKS Admitted She Participated In Scheme and Communicated with UCE**</u>

35.   FBI SAs advised BROOKS of her Miranda rights.  BROOKS waived those rights and agreed to be interviewed.  Among other

things, BROOKS admitted that she called the UCE from the Subject
Telephone, that she was "Kat," and that she was negotiating
payment for a video of Victim in "weird" and "compromising"
positions.  BROOKS said that she did not directly contact Victim
or his companion.  BROOKS said that one of the women in the
Video had contacted her through a mutual acquaintance and that
BROOKS had agreed to participate in this scheme.

## V.  CONCLUSION

36.  For all the reasons described above, there is probable
cause to believe that BROOKS has committed violations of
18 U.S.C. 875(d) (Extortion in Interstate Communications).


RICHARD ALEXANDER
Special Agent
Federal Bureau of Investigation


Subscribed to and sworn before me
this 15th day of April, 2018.


HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE

10

Attachment to Criminal Complaint
United States v. MALISHA BROOKS

[18 U.S.C. § 875(d)]

Beginning in or about February 2018, and continuing through on or about April 14, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant MALISHA BROOKS, also known as ("aka") "Kathryn," with the intent to extort money and things of value from the Victim, knowingly transmitted in interstate or foreign commerce telephone communications, electronic text communications, and social media messaging communications that contained a true threat to injure the property and reputation of that Victim, that is, defendant BROOKS threatened to publicly release a video of the Victim that would embarrass and harm the Victim's reputation if the Victim refused to pay defendant BROOKS money.